UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


PROCESS CONTROLS                     )
INTERNATIONAL, INC., d/b/a           )
AUTOMATION SERVICE,                  )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )        Case No. 4:10CV645 CDP
                                     )
EMERSON PROCESS                      )
MANAGEMENT, et al.,                  )
                                     )
        Defendants.                  )

## MEMORANDUM AND ORDER

Pending before me are several motions from the parties. Plaintiff Process

Controls International, Inc., doing business as Automation Service (Automation),

seeks to file a Second Amended Complaint. Automation also moves for a

Protective Order and an Electronic Discovery Order, and to disqualify Glenn E.

Davis and the Gallop, Johnson, & Neuman, L.C. law firm as defendants' counsel.

Meanwhile, counterclaimant Fisher Controls International, LLC has filed two

motions to amend its counterclaim, and defendant Emerson Process Management

moves for leave to file a sur-reply to Automation's motion to amend.

For the reasons that follow, I will grant in part and deny in part

Automation's motion to amend its Complaint. I will also grant its motion to

disqualify Davis and the Gallop law firm, because I find that Davis and the firm

have been laboring under a conflict of interest and are accordingly prohibited from representing Emerson in this matter. I will grant in part and deny in part Automation's motion for a Protective Order, but I will deny without prejudice Automation's request to enter an Electronic Discovery Order, because the parties have not met and conferred in good faith to come to their own agreement. I will also grant Emerson's motion for leave to file a sur-reply. Finally, I will grant Fisher's unopposed motion to file a Second Amended Counterclaim, and will deny as moot its motion to file a First Amended Counterclaim.

## Discussion

### I. Automation's Motion to Amend

Automation first seeks to file a Second Amended Complaint. The proposed Second Amended Complaint joins two new defendants, counterclaimant Fisher and non-party Rosemount, Inc. It also alleges that these defendants and Emerson influenced former defendants Factory Mutual Insurance Company and FM Approvals, LLC into denying Automation's application for FM certification, and that this amounted to false advertising, defamation, and tortious interference. Finally, Automation amends its prayer for relief to include only damages relevant

to its false advertising, defamation, and tortious interference claims. Defendants

oppose each of these amendments,[1] and I will consider each in turn.

## A.    Joinder of New Defendants Fisher and Rosemount

Automation's proposed joinder of Fisher and Rosemount implicates Rules

15 and 21, Fed. R. Civ. P.  Under Rule 15, a district court should grant leave to

amend freely "when justice so requires," and a motion to amend should only be

denied for limited reasons, including plaintiff's undue delay or bad faith in

bringing the motion, unfair prejudice to defendant, or futility of the amendment.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Amrine v. Brooks*, 522 F.3d 823, 833

(8th Cir. 2008).  The party opposing the amendment has the burden of

demonstrating that the amendment would be unfairly prejudicial.  *Roberson v.*

*Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001).  Whether to grant a motion

for leave to amend is within the discretion of the district court.  *Popoalii v.*

*Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008).  Under Rule

20(a)(2), a person may be joined as an additional defendant if:  "(A) any right to

relief is asserted against them jointly, severally, or in the alternative with respect

to or arising out of the same transaction, occurrence, or series of transactions or

---

[1]Emerson has also moved for leave to file a sur-reply to Automation's motion to amend, which Automation opposes.  In the interests of justice, I will grant Emerson's motion to file the sur-reply; I have considered it, as well as Automation's response in opposition, in determining whether to grant Automation's motion to amend.

occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Applying these factors to this case, I conclude that Automation's motion to join these parties as defendants should be granted. Emerson argues the motion should be denied because of undue delay,[2] but there is no evidence of that in the record before me. It is true that Automation had some indication when it first filed its original Complaint that Fisher and Rosemount were also involved in the alleged smear campaign against it that forms the basis of its claims. Indeed, several of the exhibits attached to its original Complaint were written or endorsed by Fisher and Rosemount, or bear those companies' signatures. However, there is also evidence in the record that Emerson has been inconsistent in its answers to Automation's inquiries about the corporate structure of these three companies. Although counsel for Emerson indicated at one time that all three are separate, Automation also presents evidence that counsel has indicated as recently as February of 2011 that these companies are related. On the basis of this record, I cannot conclude that Automation's delay in moving to join these parties was undue.

---

[2]Emerson also argues that joinder of these defendants is untimely under the Case Management Order entered in this case. That is incorrect. In my February 1, 2011 Memorandum and Order [Docket # 99], I granted the parties an additional ten days to move to amend their pleadings, and I intended this to encompass amendments that might add parties. Because Automation moved on February 10, 2011 to amend its Complaint and add these parties, its motion is timely.

There is no other basis to deny Automation's request to add parties. Emerson claims no unfair prejudice if these defendants are joined, and there is no evidence that there will be any. Discovery is still underway, and dispositive motions are not due for several months. Finally, the amendments are not futile and joinder is appropriate under Rule 20(a), because Automation claims and submits some evidence suggesting that Emerson, Fisher, and Rosemount were all involved in the same alleged smear campaign. These defendants will therefore be joined.

## B. Substantive Amendments to Complaint

Automation also moves to add allegations that these three defendants' alleged smear campaign influenced the former FM defendants to deny Automation's request for FM certification, and that these actions amount to false advertising, defamation, and tortious interference. For example, as part of Count XI, alleging false advertising in violation of the Lanham Act, 15 U.S.C. § 1125, Automation now alleges, "Emerson's false advertising has also damaged Automation Service by influencing FM and FMA to include in their standard a requirement to gain approval of the [original equipment manufacturer] in order to approve any remanufactured product."

There are no factual allegations in the rest of Automation's proposed Second Amended Complaint to support these new allegations, however. For example, Automation does not allege that any of defendants' alleged false

advertising or defamatory statements ever reached the FM parties before they

created the original equipment manufacturer requirement in 1998, or before they

denied Automation FM certification in 2009.  Indeed, aside from Automation's

conclusory allegation that defendants' false statements influenced the FM

defendants to create this requirement, there are no factual allegations anywhere in

the proposed Second Amended Complaint indicating how this requirement was

created, whether Emerson ever contacted the FM defendants about Automation, or

if any of Emerson's advertisements even reached the FM defendants.[3]  Rather,

Automation only alleges that this advertising material was sent to its customers or

published in the general market for remanufactured process control equipment.

Because the proposed Second Amended Complaint contains no factual allegations

from which I can draw the reasonable inference that defendants' alleged false

statements and advertising reached the FM defendants and influenced their

decision not to certify Automation's products, these amendments are futile and

---

[3]As discussed in my November 10, 2010 Memorandum and Order, Automation alleged in its original Complaint that Emerson and the FM defendants conspired together to create the original equipment manufacturer requirement in order to unlawfully restrain Automation's sales and to maintain a monopoly in the market for remanufactured Emerson-brand process control equipment.  However, Automation never provided any factual allegations about the OEM requirement in its original Complaint; it never allged any facts about defendants' conspiracy, or the requirement's creation.  In fact, it was this lack of factual detail supporting its allegations that lead me to grant defendants' motions to dismiss these antitrust claims under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Automation includes the very same allegations in its Second Amended Complaint about the formulation of the OEM requirement, and so there is still no basis from which to infer that defendants ever conspired, or that defendants' advertisements or statements influenced the FM parties into creating the OEM requirement.

must be denied.  *See Popoalii*, 512 F.3d at 497 (amendments may be denied if futile); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (to survive a motion to dismiss, plaintiff's allegations must be enough to raise the right to relief above the speculative level).

### C. Amendments to Prayer for Relief

Automation also seeks to amend its prayer for relief to clarify what relief it seeks based on its claims for false advertising, tortious interference, and defamation.  Emerson only opposes these amendments to the extent that Automation seeks liquidated damages for counterclaimant Fisher's alleged violation of their 2007 Settlement Agreement.  As defendants point out and Automation itself admits, however, this Agreement did not provide that Automation would be entitled to liquidated damages for any breach.  Instead, only Fisher is entitled under the Agreement to liquidated damages.  Because Automation is not entitled to these damages, this amendment is futile, and I must reject it.  The remaining and unopposed amendments to the prayer will remain, however.

Accordingly, Automation's proposed Second Amended Complaint, as amended by this Memorandum and Order, is deemed filed as of this date.  In particular, the Second Amended Complaint shall be filed with paragraphs 187,

195, 206, and 223 stricken from it. The parties are reminded of their obligation under the Rules to file responsive pleadings within the deadlines for doing so.

## II.  Motion to Disqualify

Automation next moves to disqualify Glenn E. Davis and the law firm of Gallop Johnson & Neuman LC as counsel for Emerson and counterclaimant Fisher. In support of this motion, Automation presents evidence that, although Davis and the Gallop law firm entered appearances on behalf of Emerson in May of 2010, another attorney at Gallop, Mark Weisman, provided legal services to Automation that same month and billed for those services in June of 2010. Automation also presents evidence that Weisman and Gallop provided and billed Automation for legal services since at least January of 2009, and continuing until December of 2010. Meanwhile, this case has been pending since Automation filed its original Complaint in April of 2010, and Davis and other counsel for Emerson have filed motions to dismiss Automation's Complaint and have opposed its motions to amend. Automation asserts that it only discovered this potential conflict of interest in March of 2011, when attorneys from Gallop refused to represent a senior executive at Automation on an unrelated matter because of this litigation. It argues that Davis and Gallop are prohibited under the Missouri Rules of Professional Conduct from representing Emerson in this case, because

Automation is a current client of Gallop's and Weisman's, and Weisman's conflict is imputed to Davis as a member of that firm.

Emerson opposes the motion to disqualify, contending that Automation is a former client, not a current client, of Gallop's and Weisman's, and so because Davis's representation of Emerson is not substantially related to the firm's former representation of Automation, no conflicts exist. Emerson also argues that Automation's motion is untimely and unfair. I disagree with Emerson's interpretation of the facts and conclude that disqualification is necessary.

Within the Eighth Circuit, motions to disqualify are "subjected to particularly strict scrutiny" because of the potential for abuse by opposing counsel. *Macheca Transport Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (internal quotation marks and citations omitted). Before a motion to disqualify may be granted, the party moving for disqualification must satisfy a heavy burden of showing that continuing representation would be impermissible. *See A.J. by L.B. v. Kierst*, 56 F.3d 849, 859 (8th Cir. 1995); *accord Olson v. Snap Prods, Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998). However, because courts also have the duty to maintain public confidence in the legal profession and to ensure the integrity of judicial proceedings, any legitimate doubts must be resolved in favor of disqualification. *See Olson*, 183 F.R.D. at 542; *see also Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir. 1978) (same).

Automation's motion implicates three Missouri Rules of Professional Conduct.[4]  Governing current conflicts of interest, Rule 4-1.7(a) prohibits an attorney from representing a client "if the representation involves a concurrent conflict of interest."  Mo. S. Ct. R. 4-1.7(a).  Such conflicts exist if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

*Id.*  Despite the existence of such a conflict, Rule 4-1.7 also provides that a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

*Id.* R. 4-1.7(b).  By contrast, Rule 4-1.9 prohibits an attorney from representing one client against a former client in the same or a substantially related matter in

---

[4]Local Rule 12.02 of the United States District Court for the Eastern District of Missouri adopts the Missouri Supreme Court's Rules of Professional Conduct as the District's Rules of Professional Conduct.  *See* E.D. Mo. L. R. 12.02.

which the current client's interests are materially adverse to the former client's, unless the former client gives informed consent, confirmed in writing. *Id.* R. 4-1.9. Finally, Rule 4-1.10(a) prohibits lawyers associated in a firm from "knowingly represent[ing] a client when any one of them practicing alone would be prohibited from doing so by Rules 4-1.7 or 4-1.9 . . . ."

Here, Emerson argues that Automation is a former client of the Gallop law firm's and Weisman's under Rule 4-1.9. Emerson admits that the Gallop law firm, through Weisman, represented Automation in 2009 and 2010 and billed Automation for 3.9 hours of services performed during that time. However, Emerson denies that these matters make Automation a current client, arguing that Weisman's and the firm's representation was limited to self-contained, brief encounters in which Automation's employees would seek employment advice, and Weisman would answer their requests.

Even if I agreed that Weisman's and the Gallop firm's representation of Automation in 2009 and 2010 was limited to "self-contained" representation – that is, that the firm's representation of Automation was not continual during this time period, but began and ended each time Automation sought and received legal services – it is undisputed that the firm actually represented both Automation and

Emerson during this litigation.[5]  As outlined above, Automation sought and

received legal advice from Weisman and was billed for that advice throughout

2009 and 2010.  Accordingly, an attorney-client relationship existed between

Weisman and Automation, and Weisman was therefore barred by Rule 4-1.7(a)

from representing another client against Automation.  *See Westinghouse Elec.

Corp. v. Kerr-McGee Corp.*, 580 F.3d 1311, 1319 (7th Cir. 1978) (attorney-client

relationship established when the client believes that it is consulting a lawyer in

his profession capacity and manifests her intention to seek professional legal

advice); *see also* Mo. S. Ct. R. 4-1.7(a) (prohibiting attorneys from representing

two clients if the representation of one will be directly adverse to the other).  Any

conflicts arising from Weisman's representation of Automation are imputed to

Davis, because they are attorneys in the same firm.  *See* Mo. S. Ct. R. 4-1.10(a).

---

[5]In fact, I conclude that Gallop's representation of Automation was continual, and not limited to discrete, or self-contained instances of representation as Emerson suggests.  Generally, representation ends as provided by contract or the lawyer has completed the contemplated services.  *See Edelstein v. Optimus Corp.*, No. 8:10-cv-00061-JFB-FG3, 2010 WL 3843595, at *2 (D. Neb. Sept. 24, 2010) (citing Restatement (Third) of the Law Governing Lawyers § 31(2)(e)).  However, attorneys and clients may also contemplate a continuing relationship in which the attorney handles legal matters as they arise.  *See id.* at *3 (quoting Restatement § 31, cmt. *h*).  When considering whether representation has ended, a court may consider the parties' course of dealing, including whether representation was limited to one matter, or whether it continued for several different matters.  *See, e.g., id.*  Contracts with a client are to be construed from the client's viewpoint, however, and so "the client's reasonable understanding of the scope of the relationship controls."  *See id.* (quoting Restatement § 31, cmt. *h*).  Here, the evidence shows that since at least 2009, Automation has sought legal advice from Weisman from time to time, and that Weisman has never declined representation, but instead has provided advice and billed for that advice.  Construing this relationship through Automation's viewpoint, I cannot conclude that the relationship was anything but continuing.

Accordingly, Davis' and the Gallop firm's concurrent representation of Emerson in this case is prohibited by Rule 4-1.7. *See* Mo. S. Ct. R. 4-1.7(a); *see also id.* cmt. 6 ("Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."). As it is undisputed that Automation has not given the written consent to this representation required by Rule 4-1.7(b), this concurrent representation is prohibited by the Rules of Professional Conduct and subjects Davis and the Gallop law firm to disqualification.

Emerson also argues that Automation's motion is untimely and unfair. I disagree. Under Missouri law, motions to disqualify should be filed with "reasonable promptness" after the party becomes aware of the conflict, so as to prevent that party from using disqualification as a strategic tool to deprive its opponent of counsel of its choice after substantial preparation has been completed. *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach*, 303 S.W.3d 591, 599 (Mo. Ct. App. 2010); *Terre Du Lac Prop. Owner's Ass'n, Inc. v. Shrum*, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983). Here, the evidence reveals that Automation became aware of the conflict in early March of 2011, after an attorney with the Gallop firm declined to represent one of Automation's executives in an unrelated matter because of the firm's representation of Emerson in this case. It filed its motion to disqualify on March 17, 2011. On the basis of this record, I cannot

conclude that Automation's motion is untimely. Emerson speculates that Automation must have known about the conflict before then, because Davis entered an appearance as an attorney with the Gallop law firm in May of 2010. There is no evidence to support that conclusion, however. Automation has numerous employees, and it is undisputed that the employees who sought legal advice from Weisman are not actively involved in this litigation. Accordingly, I disagree that the motion is untimely. *Compare Shrum*, 661 S.W.2d at 48 (motion untimely when defendant moved to disqualify nineteen months after the suit was filed, and defendant undisputedly was aware of conflict when case was filed against him and had even objected to potential conflict in a deposition months before filing motion to disqualify).

I finally conclude that disqualification is required despite any potential prejudice to Emerson. Because disqualification will deprive Emerson of one counsel of its choice, Davis, I do not enter this Order lightly. The undisputed facts reveal a clear conflict of interest between the Gallop law firm's concurrent representation of Automation and Emerson, even if in unrelated matters, which is prohibited by Rule 4-1.7(a). Additionally, Emerson is represented by several other, well-respected attorneys with years of experience among them. Most importantly, however, this Court has a duty not only to adjudicate the facts and legal issues before it, but also to maintain public confidence in the legal profession

and to ensure the integrity of judicial proceedings, and any legitimate doubts must be resolved in favor of disqualification. *See Olson*, 183 F.R.D. at 542. Given the clear conflict of interest in this case, and the duty to ensure the integrity of these proceedings, I conclude that I must disqualify Davis and the Gallop firm.

### III. Motion for a Protective Order

Automation next moves for a Protective Order prohibiting disclosure of its confidential and proprietary information to four of Emerson's in-house counsel. Automation argues that these in-house attorneys pose too great a risk of inadvertently disclosing Automation's proprietary information, and so must be denied access to it. In response, Emerson has filed its own proposed Protective Order, which would allow the parties to designate only certain proprietary information – pricing information, customer lists, marketing plans, or proprietary software – as "Confidential Information: Outside Counsels' Eyes Only." Automation replies with a new proposed Protective Order, a modified version of the Court's form Protective Order for patent cases found in Appendix A to the Local Patent Rules for the Eastern District of Missouri. Automation's modified version would prohibit Emerson's in-house counsel from reviewing any information or documents that Automation determines contains confidential proprietary information.

Essentially, the parties agree that some proprietary information should be kept confidential and viewable only by counsel, but they disagree over whether this information may be viewed by in-house counsel as well. They also disagree about whether they may designate any information as for counsels' eyes only, or whether such information should be limited to the list of proprietary information in Emerson's proposed Protective Order. I agree with Automation that the parties should themselves be allowed to designate what information they deem as confidential and proprietary and/or for counsels' eyes only. Thus, I reject Emerson's proposed Protective Order as too limiting in the type of information the parties may designate as confidential or for counsels' eyes only. I also agree with Automation that the Protective Order should contain a mechanism for the parties to challenge and change the designation of information as confidential or for counsels' eyes only. However, I conclude that there is no evidence to support Automation's claim that any of Emerson's in-house attorneys will disclose its confidential and proprietary information. Accordingly, I will enter Automation's second proposed Protective Order as modified below as the Protective Order in this case.

Pursuant to Rule 26(c), Fed. R. Civ. P., a district court may enter an order protecting disclosure or discovery upon a showing of good cause. Fed. R. Civ. P. 25(c)(1). Such an order may specify the terms for the disclosure or discovery, or

require that a trade secret or other confidential information not be revealed or be revealed only in a specific way. *See id.* The party moving for a Protective Order has the burden of demonstrating good cause for the order. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999). The good cause that must be shown includes a showing of specific harm or prejudice that will result if no Protective Order is issued, *see Frideres v. Schlitz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993), and a party must make "a particular and specific demonstration of fact, as distinguished from stereotype and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quoting 8C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035 (1970)). In determining whether to issue the Protective Order, a district court must also consider the hardship to the non-moving party if the order is granted. *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973).

Here, Automation contends that none of Emerson's in-house counsel should have access to its confidential and proprietary information, because the risk for those attorneys inadvertently disclosing this information is too high. In a leading case on the issue of whether in-house counsel should be denied access to confidential and proprietary information, the Court of Appeals for the Federal Circuit held that access should not be denied solely because of counsel's in-house status. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984);

*accord Brown Bag Software v. Symantic Corp.*, 960 F.2d 1465, 1470-71 (9th Cir. 1992); *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991). Instead, the court must consider each counsel on an individual basis, reviewing that counsel's actual duties at the client corporation, and determine whether there is a risk that counsel will inadvertently reveal confidential and proprietary information in the course of her day-to-day activities. *U.S. Steel*, 730 F.2d at 1468.

For example, in-house counsel may be denied access to confidential information if counsel is involved in "competitive decisionmaking" at the company. *See id.* The Federal Circuit defined competitive decisionmaking as:

> shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*Id.* at 1468 n.3. In other words, in-house counsel should be denied access if her daily activities at the client – including her participation in decisions about pricing, marketing, etc. – make it more likely that she will inadvertently reveal and misuse confidential and proprietary information she learned about her client's competitor through discovery. *See id.*; *compare Matsushita*, 929 F.2d at 1580 (in-house counsel should not have been denied access when counsel only came into

daily contact with decisionmakers at client but did not actually participate in those decisions himself).

Here, Automation contends Emerson's four in-house counsel should be denied access to its confidential and proprietary information, because these attorneys have frequent contact with and "must clearly interact with competitive decisionmakers" at Emerson.[6] However, these arguments in favor of denying access – that counsel has frequent contact with decisionmakers – were squarely rejected by the Federal Circuit in *U.S. Steel* and *Matsushita*. Indeed, rather than pointing out the frequent contacts these in-house counsel have with decisionmakers at Emerson, Automation as the movant has the burden of showing that these attorneys participate in these types of decisions themselves. *See Matsushita*, 929 F.2d at 1580 (lower court's finding that in-house counsel had frequent contacts with decisionmakers was irrelevant to analysis, because the "standard is not 'regular contact' with other corporate officials who make 'policy,' or even competitive decisions, but 'advice and participation' in 'competitive decisionmaking.'"). It has failed to meet this burden, however, and the only other

---

[6]With respect to in-house counsel, John P. Dilger, Automation claims this counsel should be denied access because he was involved in the facts leading up to this litigation, and has been listed as a potential witness by Automation. But the evidence supporting this claim reveals that Dilger merely requested an audit of Automation as part of the parties' ongoing litigation and as part of his role as counsel for Automation. Such activities are not the type of competitive decisionmaking activities that would make counsel ineligible to review Automation's confidential information under *U.S. Steel*.

evidence before me, four affidavits from Emerson's in-house counsel, reveals that none of these attorneys is involved in competitive decisionmaking. Instead, these in-house counsel provide legal advice and analysis to Emerson. Because Automation has failed to present any evidence of in-house counsels' involvement in competitive decisionmaking, its request to deny these attorneys access to its proprietary information must be denied.

As discussed above, however, I agree with Automation that the Court's form Protective Order, as modified by Automation, is an appropriate Protective Order for this case. It allows the parties to designate two levels of confidential information – confidential information, and confidential information for counsels' eyes only – as the parties see fit, and allows them to challenge designations if they deem it necessary. Although the parties could not agree on whether Emerson's in-house counsel should have access to Automation's proprietary information, their briefs and the other evidence before me indicate that they at least agree that proprietary information should be kept confidential, and that some information should even be limited to counsels' eyes only because of its highly sensitive nature. I agree, and therefore conclude that good cause exists for entering this Protective Order. In the absence of the parties' agreement, it is the best fit for the parties' legitimate discovery concerns. Accordingly, Automation's second

proposed Protective Order as modified by this Order will be entered as the Protective Order in this case.

## IV.    **Motion for Electronic Discovery Order**

Automation moves for the entry of an Electronic Discovery Order to govern discovery of electronically stored information in this case.  In support of that motion, Automation contends that the amount electronic discovery in this case will be voluminous, and so an Order is necessary to organize and accommodate that discovery.  Emerson objects to the entry of such an Order, arguing it is unnecessary because the parties have no discovery disputes and Emerson is ready to produce all of its electronically stored information.  It also contends that Automation's proposed Electronic Discovery Order is unduly burdensome.  In reply, Automation denies that its proposed Order is unduly burdensome. Automation also contends that, although the parties do not yet have any disputes over electronic discovery, an Electronic Discovery Order is still necessary because of the great volume of documents in this case.

I will not enter an Electronic Discovery Order at this time.  Rule 26(f), Fed. R. Civ. P., anticipates and encourages parties' good faith attempts to come to their own agreements for the discovery of electronic data.  Because my review of the motion, memoranda, and exhibits associated with Automation's request for such an Order reveal that the parties have not made a good-faith effort to come to their

own agreement, I will deny the request at this time. *Cf. Scotts Co. LLC v. Liberty Mut. Ins. Co.*, Civil Action 2:06-CV-899, 2007 WL 1723509, at *3-5 (S.D. Ohio June 12, 2007) (denying plaintiff's request for an electronic discovery order compelling production of electronic documents from defendant, when record revealed that the parties had not met and conferred in good faith to resolve their disputes).

Accordingly, I will order the parties to meet and confer *in person* and make all reasonable attempts to resolve this issue on their own.  In the absence of any actual discovery dispute, I cannot see any benefit from my creating an Electronic Discovery Order for the parties from whole cloth, when they know better than I what information they have and what information they need.  Automation is correct that the discovery in this case will be voluminous, but that reason alone is insufficient for me to enter an Order for the parties when they have not first tried in good faith to create their own agreement.

## V.    Fisher's Motions to Amend

Counterclaimant Fisher has filed two motions to amend its counterclaim. The first, filed in January, seeks only to assert additional categories of relief in the Prayer for Relief, while the second, filed in March, seeks to add newly discovered allegations and a new count for misappropriation of trade secrets by Automation and its employee, John Rooneo.  Automation does not oppose either motion.

Because it is unopposed, I will grant Fisher's motion for leave to file its Second Amended Counterclaim. Because the second motion for leave to amend makes moot the first motion, I will deny that motion as moot. Fisher's second amended counterclaim is deemed filed as of this date, and the parties are reminded of their duty under the Rules to serve any unserved party and to file responsive pleadings within the time set by the Rules.

For these reasons,

**IT IS HEREBY ORDERED** that Fisher's motion for leave to file a First Amended Counterclaim [#96] is denied as moot.

**IT IS FURTHER ORDERED** that Automation's motion to amend its Complaint [#101] is granted and denied in part as described in this Memorandum and Order, and its proposed Second Amended Complaint [#101-1] is deemed filed as of this date with paragraphs 187, 195, 206, and 223 stricken from it.

**IT IS FURTHER ORDERED** that Emerson's motion for leave to file a sur-reply [#105] is granted.

**IT IS FURTHER ORDERED** that Automation's motion for a Protective Order [#107] is granted and denied in part, and a modified version of its second proposed Protective Order will be entered this same date as the Protective Order in this case.

**IT IS FURTHER ORDERED** that Automation's motion for an Electronic Discovery Order [#109] is denied without prejudice; the parties are further ordered to meet and confer in person and in good faith in an effort to come to their own agreement about electronic discovery.

**IT IS FURTHER ORDERED** that Automation's motion to disqualify Glenn E. Davis and the Law Firm of Gallop, Johnson & Neuman, L.C. [#111] is granted.

**IT IS FURTHER ORDERED** that Fisher's motion for leave to file a Second Amended Counterclaim [#115] is granted, and its Second Amended Counterclaim is deemed filed as of this date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 10th day of May, 2011.