UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PROCESS CONTROLS | ) | |
| INTERNATIONAL, INC., d/b/a | ) | |
| AUTOMATION SERVICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV645 CDP |
| | ) | |
| EMERSON PROCESS | ) | |
| MANAGEMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before me are several motions from the parties.  Plaintiff Process

Controls International, Inc., doing business as Automation Service, moves to

compel defendants Emerson Process Management and Fisher Controls

International, LLC to withdraw certain objections, answer interrogatories, and

produce documents.  Defendants EPM, Fisher and Rosemount, Inc.[1] move for

sanctions against plaintiff for spoliation of evidence.

---

[1]EPM, Fisher, and Rosemount are all entities within the Emerson company.  I will
therefore use their distinct names when referring to one specific entity, but will use "Emerson"
when referring to any two or three of the entities collectively.

For the reasons that follow, I will grant in part and deny in part Automation's motion to compel.  I will grant in part and deny in part Emerson's motion for sanctions.

## I.    <u>Motion to Compel</u>

Automation has moved to compel discovery against EPM and Fisher. Automation seeks an order compelling Emerson to respond to discovery requests and withdraw the following objections:

1.    EPM's and Fisher's General Objection No. 5 to Planitiff's First Set of Interrogatories and Request for Production of Documents;

2.    EPM's and Fisher's General Objections Nos. 9 and 10 to Plaintiff's First Set of Interrogatories and Request for Production of Documents;

3.    EPM's and Fisher's General Objection No. 12 to Plaintiff's First Set of Interrogatories;

4.    EPM's Specific Objection to Interrogatory No. 6;

5.    EPM's Specific Objection to Interrogatory No. 13; and

6.    EPM's Specific Objection to Request for Production No. 75.

A.    <u>EPM's and Fisher's General Objection No. 5 to Plaintiff's First Set of Interrogatories and Requests for Production of Documents</u>

EPM and Fisher both made the following general objection to Automation's First Set of Interrogatories and Requests for Production of Documents:

> General Objection No. 5:  [EPM/Fisher] objects to the extent that any individual request or interrogatory seeks information and documents that are not related to the matters in this case.

Automation argues that Emerson has relied on this objection to refuse to search for and produce documents on the individual laptops of all of Emerson's field sales employees.  Automation believes there may be documents on the computers that contain statements about the relative safety of the parties' products and that were sent to Automation's customers or potential customers.  Emerson has already conducted searches of its company databases and the individual computers of fifteen salespeople identified by Automation and Emerson as possibly having been involved with the relevant customers.  Automation has not identified any more specific salespeople suspected to be involved in false advertising or that dealt with lost Automation customers, and Emerson has over 130 salespeople nationwide. Emerson's production was therefore sufficient, and I will deny Automation's motion to compel with regard to the withdrawal of General Objection No. 5 and the search of further salespeople's computers.

   B.   EPM's and Fisher's General Objections Nos. 9 and 10 to Plaintiff's First Set of Interrogatories and request for Production of Documents

- 3 -

EPM and Fisher both made the following general objections to

Automation's First Set of Interrogatories and Requests for Production of

Documents:

> General Objection No. 9:  [EPM/Fisher] objects to the production of
> any documents or information from the period prior to December 3,
> 2007.  The Court specifically found that Plaintiff only alleged claims
> for false advertising, tortious interference, and defamation arising
> from [EPM's/Fisher's] activities after that date, and that Plaintiff's
> claims for activities prior to that date are barred by settlement and
> release.
>
> General Objection No. 10:  [EPM/Fisher] objects to the production of
> any documents or information from the period after April 16, 2010,
> the date on which the complaint was filed.

At the hearing on this motion, defendant's counsel withdrew General

Objection No. 10, agreeing to supplement its discovery past the April 16, 2010

deadline it had raised in the objection.  The motion to compel is therefore moot

with regard to General Objection No. 10.

The parties entered into a settlement agreement barring claims for anything

that occurred prior to December 3, 2007, and this is the basis for Emerson's

General Objection No. 9.  Automation argues that it is entitled to documents from

before this date even if they are not themselves admissible, as they may lead to

other relevant and admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).  While it is

true that Rule 26(b) is "liberal in scope and interpretation," it should not be

"misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  Emerson has already agreed to produce documents created before December 3, 2007 if they were used after that date.  I find that this is reasonable, and so deny Automation's motion to compel with regard to General Objection No. 9.

      C.    <u>EPM's and Fisher's General Objection No. 12 to Plaintiff's First Set of Interrogatories</u>

      EPM and Fisher both made the following objection to Automation's First Set of Interrogatories:

> General Objection No. 12:  [EPM/Fisher] objects that several interrogatories contain discrete subparts on separate subjects, such that these subparts together exceed the thirty (30) interrogatories allowed under the Case Management Order.  [EPM/Fisher] will not answer further interrogatories in the absence of an Order from the Court.

In the Case Management Order, I already expanded the number of interrogatories from 25 to 30.  Taken in the aggregate, Automation's interrogatories likely exceed this number.  On the other hand, it was likely improper for Emerson to selectively answer some interrogatories and generally object to the overall number.  The parties have not provided me with enough guidance to know exactly what information is at stake by allowing or withdrawing this objection, and why such information is or is not relevant.  As I lack sufficient information about exactly

what discovery is being withheld because of this objection, I will deny the motion

to compel on this point.

   D.    EPM's Specific Objection to Interrogatory No. 6

   Interrogatory No. 6 states,

   For Each Emerson Product and Encore Product state:
   (a)    Whether it is FM Approved;
   (b)    All standards with which it complies (i.e., ASME, FM, etc.);
   (c)    All third party testing labs (whether or not it is a Nationally
   Recognized Testing Laboratory) by which the product is
   approved or certified (e.g. UL, CSA, Intertek);
   (d)    The number of units sold by year from 2000 to the present;
   (e)    The list or published retail price, the mean and average selling
   prices and the profit margin;
   (f)    All intellectual property related to each;
   (g)    The entity which owns any intellectual property identified; and
   (h)    All documents related to your answer.

EPM objects to this interrogatory on multiple grounds, including the fact that

Automation identified 35 separate models of equipment and asked for eight pieces

of information for each, totaling 280 discrete subparts.  Furthermore, EPM argues

that discovery of all its intellectual property is irrelevant, and that some of the

information requested is publicly available.

   EPM argues that none of Automation's claims implicate Emerson's

intellectual property.  However, Count XII of Automation's Third Amended

Complaint seeks a declaratory judgment that Automation's remanufactured

Emerson products do not violate any trademark or copyright laws.  This count very

- 6 -

plainly implicates Emerson's intellectual property with regard to all those products remanufactured by Automation.  EPM also argues that Fisher's patent infringement counterclaims only concern one product, the Fisher DVC-6000, and that its trademark violation claims are "relatively narrow."  I disagree.  For example, Fisher's Second Amended Counterclaim, Count II, states in part,

> Automation Service's Remanufactured Original Fisher Equipment that bear one or more federally registered trademarks owned by Fisher, under circumstances that do not clearly and/or permanently indicate that such products are Remanufactured, constitutes trademark infringement under the Lanham Act.

Any Emerson product remanufactured by Automation therefore appears to be relevant to both Automation's complaint and Fisher's counterclaim.

However, the scope of Interrogatory No. 6 is overbroad and unduly burdensome.  I will order Emerson to answer parts (a) and (d) of this Interrogatory only.

E.    EPM's Specific Objection to Interrogatory No. 13 and Request for Production No. 75

There are currently multiple claims in this lawsuit relating to EPM's assertions that it can remanufacture products more safely than Automation, due to EPM's access to designs, documentation, tolerances, and other confidential data. This is the basis for Automation's Interrogatory No. 13 and Request for Production No. 75.  Interrogatory No. 13 states,

> For each Emerson Product identify all confidential information, design features, measurements, specifications, dimensions or other attribute which:  (1) is unknown to companies outside Emerson, Fisher, Rosemount and Encore (2) not capable of being "reverse engingeered" or otherwise learned by an examination of the product by a skilled individual, and (3) is important to the safe operation of the product (including an explanation of why the particular unknown and unknowable feature relates to safety) and identify all documents relating to your answer.

Request for Production No. 75 seeks:

> All documents which show confidential designs, documentation, specification tolerances or other data necessary to safely remanufacture any Emerson or Fisher or Rosemount Product.

Automation argues that access to such information is essential to litigate those counts relating to EPM's claims regarding the relative safety of the parties' remanufactured products.

EPM objects on the grounds that both requests are "overbroad, unduly burdensome, and calling for production of documents that are wholly irrelevant to the issues in this case."  EPM further argues that it should not be compelled to allow Emerson to produce "highly sensitive and proprietary engineering information" to one of its chief competitors.  EPM raises this concern especially in light of Automation's past actions, discussed more fully below but which include destruction and improper publication of defendants' confidential information.  As discussed below, Automation burned and shredded many pages of defendants'

confidential documents it had obtained from a former Fisher employee. Furthermore, on August 3, 2011, in support of its motion to compel, Automation publicly filed eight exhibits that Emerson had designated as confidential pursuant to the protective order in this case.

I agree with Automation that some of the information sought in Interrogatory No. 13 and Request for Production No. 75 may be relevant to this case. The discovery requests are, however, overbroad. Emerson need not produce "all" documents, but rather only those which are sufficient to show the tolerances and confidential information directly at issue in Emerson's safety assertions. Furthermore, in light of Automation's past conduct with destruction and publication of Emerson's confidential material, Emerson need not hand over the documents to Automation. Rather, plaintiff's attorney may, with an expert, view the documents at defendants' office or another location agreed upon by the parties. Unless Emerson agrees, Automation may not make or keep any copies of the confidential documents. If Automation believes it should be entitled to take copies of any particular document, it may file an appropriate and specific motion.

## II.   <u>Motion for Sanctions</u>

### A.   <u>Background</u>

Emerson has moved for sanctions against Automation for spoliation of evidence. Emerson advertises in its marketing materials and in correspondence to customers that its equipment is safer than Automation's because Emerson has access to certain confidential information about the equipment's original specifications and tolerances. Automation claims that these statements are false, and seeks recovery for false advertising, tortious interference with business expectancy, and defamation, based, at least in part, on these statements. Additionally, Emerson's counterclaim alleges that Automation took and used its confidential documents, in violation of Missouri's trade secret law. Emerson argues that it is prejudiced in trying to prove that Automation possessed and relied on this information because plaintiffs destroyed some documents. Emerson requests sanctions in the form of a directed verdict, or in the alternative, an adverse inference instruction, as well as attorneys' fees.

The documents at issue are design drawings taken from Fisher by John Rooneo, a former Fisher employee who was later hired by Automation. Rooneo claims the drawings were among documents from his desk that were delivered to him at his home after his termination from Fisher, in September of 2009, although Emerson contests that. The documents numbered between approximately 1100

and 1200 pages.  Once Rooneo began work for Automation, on March 15, 2010,

he used the drawings as a reference for his work about once or twice a week.

Around May of 2010, after the present litigation had begun, Rooneo

delivered the documents to Automation.  Two copies of the documents were made.

The original set of 1100 to 1200 pages was returned to Rooneo, an incomplete set

of 697 pages was delivered to Automation's attorney, John Walsh, and another

complete set of 1100 to 1200 was kept by Keith Wilson, Automation's production

manager.  Wilson instructed an employee, Patrick McClain, to organize his set of

drawings, analyze them, and determine whether they would be useful.

Walsh allegedly told Automation's upper management to keep the

documents intact, but did not stress the issue because he believed his set of 697

was a full and complete set of the documents.  Walsh also met with Rooneo in July

of 2010, but never told him to keep his set of the design drawings intact.  In the

winter of 2010 – 2011, Rooneo began burning drawings from his set, allegedly to

save money on fire starters.  All that remains are 329 out of the original 1100 to

1200 pages.  McClain also shredded between one and two hundred pages of his

set.  McClain alleged that he was merely de-duping (destroying duplicate copies)

in the set.  However, there are thirteen pages that appear in Rooneo's remaining

set that do not appear in the approximately 900 pages remaining in McClain's set.

Therefore, either McClain destroyed some pages that were not in fact duplicates, or his set was not complete to begin with.  There are also sixty-seven documents out of Rooneo's 329 that do not match any pages in Walsh's set of 697.  It therefore appears reasonable that at least some of the destroyed documents have no remaining counterparts, and are now completely unidentifiable.

Many of the documents – possibly as many as seventy five percent – were marked as confidential.  Some of the documents have markings, handwritten-notes, and white-out on them, but it is unclear by whom these were added and when.  Rooneo admitted to using the drawings in his work as a machinist for Automation.  He claimed that Automation had comparable drawings, but he preferred the format of the Fisher drawings.  McClain, however, says he determined the drawings were useless to Automation.  Automation contends that many of the drawings were out-of-date, and the specifications used in the drawings were broader than those used by Automation, making the information effectively worthless.

B.   Analysis

A court's inherent power includes the discretionary "ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see also Stevenson v. Union Pac. R.R.*

- 12 -

*Co.*, 354 F.3d 739, 750 (8th Cir. 2004); *Ameriwood Indus. v. Liberman*, No.

4:06CV524DJS, 2007 WL 5110313 at *4 (E.D. Mo. July 3, 2007).  Among many

different sanctions, the court may give a jury instruction on the "spoliation

inference," an inference which permits the jury to assume that the destroyed

evidence would have been unfavorable to the position of the offending party;

exclude certain evidence of the offending party; enter judgment of default in favor

of the prejudiced party; and/or impose the prejudiced party's attorney's fees on the

offending party.  Fed. R. Civ. P. 37(b)(2); *see also Liberman*, 2007 WL 5110313

at *4; *Moyers v. Ford Motor Co.*, 941 F. Supp. 883, 885 (E.D. Mo. 1996).

      1.   *Prejudice*

There must be a finding of prejudice to the opposing party before imposing

a sanction for destruction of evidence.  *Dillon v. Nissan Motor Co.*, 986 F.2d 263,

267 (8th Cir. 1993); *Stevenson*, 354 F.3d at 748.  In *Stevenson*, a railroad

company, pursuant to its retention policy, destroyed voice tapes that had been

recorded at the time of an accident, as well as various track maintenance records.

*Id*. at 743.  As to the voice tapes, the Eighth Circuit found the destruction

prejudicial given they were "the only recording of conversations ...

contemporaneous with the accident."  *Id.* at 748.  The destruction was prejudicial

even though there was no indication that the tapes contained "smoking-gun"

evidence, and the fact they were destroyed before litigation was initiated.  *Id.*  In

*Liberman*, defendants used a computer program to permanently delete files from

various harddrives, even after litigation had begun and plaintiff had requested

images of the harddrives.  2007 WL 5110313 at \*6.  Discussing prejudice, this

court noted that "the fact that plaintiff cannot show what information and

documents were destroyed ... is precisely the problem."  *Id.* at \*7.

      As in *Liberman*, the fact that Emerson cannot show exactly what

information was contained in the destroyed pages is "precisely the problem."  At

the most conservative estimate, the information contained in about two hundred

pages has been destroyed.[2]  This number is even greater if Rooneo made notations

and markings on the pages he burned that would not appear on McClain's copies.

Even though the remaining pages may be an accurate representation of the

documents that were destroyed, there is simply no way to tell.  McClain and

Rooneo may have destroyed the documents for de-duping and for fire starters,

respectively, or they may have purposefully destroyed "smoking-gun" pages.

Emerson has publicly asserted that its products are safer than Automation's,

---

[2]The full set of documents numbered between 1100 and 1200 pages.  Rooneo burned all
but 329 of those pages, but McClain only shredded between one and two hundred pages of his
set.  Therefore the only pages lost completely are those that were destroyed by both Rooneo and
McClain, which can at most number two hundred.

because Emerson has access to confidential design information.  This is at least

part of the basis for Automation's claims for false advertising, tortious interference

with business expectancy, and defamation.  Emerson has brought a counterclaim

for the misappropriation of its confidential documents.  If the destroyed documents

contained confidential design information, they would likely prove helpful – if not

essential – to Emerson's litigation of these claims.  In light of *Liberman* and

*Stevenson*, the destruction of the Fisher design drawings must therefore be

considered as prejudicial.

        2.   *Duty to Preserve*

Automation argues that it had no duty to preserve the documents, as they

were not relevant to any claims that had been pled at the time of spoliation.  It

argues that the only claim for which the documents might be relevant is Fisher's

counterclaim for misappropriation, filed on May 10, 2011.  Automation cites

*E\*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn.

2005), for the proposition that "the obligation to preserve evidence begins when a

party knows or should have known that the evidence is relevant to future or

current litigation."  Automation then argues that since litigation had begun but the

misappropriation claim had not already been pled, there was no way to know that

it might become an issue.

- 15 -

This is illogical.  If it is possible for a party to reasonably foresee a need to preserve documents when litigation has not even begun, it is certainly reasonable for a party to foresee the same need when a lawsuit has already commenced. Claims are added and amended in lawsuits all the time.  The possibility that possessing your competitor's confidential documents might become relevant to ongoing litigation with that very same competitor is reasonably foreseeable.  In the *E*Trade* case cited by Automation, the court found that the culpable party "clearly knew about the potential for litigation" and "had the obligation to retain all information and documentation that would be relevant."  *Id*. at 589 (holding even though the party requesting sanctions may not have known of the potential fraud claims, the party which destroyed the evidence would have been clearly aware of such potential claims).

### 3.  *Appropriate Sanctions*

Emerson asks that the court grant a judgment in its favor on all of Automation's remaining claims as well as Fisher's counterclaim for misappropriation of trade secrets.  Emerson further requests recovery of its fees and costs.  "This court 'is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances.'"  *Liberman*, 2007 WL 5110313 at *4 (quoting *Chrysler*

*Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999)).  Although a finding of bad faith "is not always necessary to the court's exercise of its inherent power to impose sanctions," *Stevenson*, 354 F.3d at 745, there must be a finding of "intentional destruction indicating a desire to suppress the truth" in order to dismiss a claim. *Menz. v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006).

I do not believe dismissal is an appropriate sanction in this case. "The sanction of striking pleadings should be used sparingly because in this system of justice 'the opportunity to be heard is a litigant's most precious right.'" *Liberman*, 2007 WL 5110313 at *5 (quoting *Edgar v. Slaughter*, 548 F.2d 770, 772 (8th Cir. 1977)). "There is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." *Id.* (quoting *Chrysler Corp*, 186 F.3d at 1020). Such a drastic sanction is typically reserved for the most egregious offenses. *See, e.g., Liberman*, 2007 WL 5110313 (defendant deleted computer harddrives that were subject of litigation)*; Global Traffic Techs., LLC v. Tomar Elecs., Inc.*, No. 05-756, 2007 WL 4591297 (D. Minn. Dec. 27, 2007) (defendant repeatedly violated court orders, despite having been sanctioned on four previous occasions in the case); *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772 (N.D. Tex. 2011) (defendants intentionally destroyed evidence that was "critical" to the

case and litigation was reasonably foreseeable).  This spoliation, though serious,

does not rise to such a level.

In the alternative, Emerson asks for a sanction in the form of an adverse

inference instruction.  In *Stevenson*, the Eighth Circuit distinguished between

spoliation that occurred before and after the start of litigation.  354 F.3d at 749-50.

The District Court in *Stevenson* issued an adverse inference instruction regarding

the defendant's destruction of track maintenance records both before and after

litigation had begun, despite finding that the records were not destroyed in bad

faith.  *Id*. at 746, 748.  The Eighth Circuit reversed in part, holding that negligence

alone is insufficient to support an adverse inference instruction for prelitigation

destruction of evidence.  *Id.* at 747 ("there must be some indication of an intent to

destroy the evidence for the purpose of obstructing or suppressing the truth").

However, an adverse inference instruction for "the ongoing destruction of records

during litigation" is allowed "even absent an explicit bad faith finding."  *Id.* at

750.

Here, both Rooneo and McClain destroyed their respective documents after

litigation had already begun.  According to the Eighth Circuit standard, therefore,

a finding of bad faith is not required to impose an adverse inference sanction.

*Stevenson*, 354 F.3d at 750.  Furthermore, *Stevenson* involved a routine document

retention policy.  *Id.* at 747.  Adherence to such a policy creates a potentially

innocuous excuse for the destruction of documents.  Even in light of this policy,

the Eighth Circuit held that an adverse inference instruction was appropriate for

the negligent destruction of documents after the commencement of litigation.  *Id.*

at 749-50.  No such policy was in effect here; both Rooneo and McClain destroyed

their documents *ad hoc*.  At a minimum, plaintiff's counsel, upper management,

and Rooneo knew of the present litigation at the time the documents were

destroyed.   Rooneo had even met with plaintiff's counsel before he began

destroying his set.  I therefore find that Rooneo's acts were conducted in bad faith,

and that McClain's acts were at least negligent.  As established in *Stevenson*, an

adverse inference sanction is appropriate under either standard since all of the

spoliation occurred after the beginning of litigation.  I will therefore provide an

instruction to the effect that the jurors may, though are not required to, assume the

contents of the destroyed documents would have been adverse to Automation.

      "A permissive inference is subject to reasonable rebuttal."  *Stevenson*, F.3d

at 750 (citing *Webb v. District of Columbia*, 146 F.3d 964, 974 n.20 (D.C. Cir.

1998)).  "Unfair prejudice should be avoided by permitting the defendant to put on

some evidence ... as an innocent explanation for its conduct."  *Id.*  Automation has

offered an innocent explanation for its conduct, even if it was not part of a routine

retention policy.  Furthermore, the entire sets of documents were not destroyed, and the remaining pages may or may not be representative of the information contained in the destroyed pages.  Although I will not permit "a complete retrial of the sanctions hearing during trial," *id.*, I do believe it is fair and reasonable under these circumstances to allow Automation a limited opportunity to rebut the adverse inference instruction.

Finally, I will award Emerson attorneys' fees for costs associated with litigating the motion for sanctions.  Federal courts have inherent power to award attorneys' fees as a sanction.  *Stevenson*, F.3d at 751 (citing *Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1434-35 (8th Cir. 1997)).  "A bad faith finding is specifically required in order to assess attorneys' fees."  *Id.* (citing *Dillon*, 986 F.2d at 266).  As discussed above, Rooneo's burning of the documents was conducted in bad faith, making an award of attorneys' fees appropriate.  However, this is a large and far-reaching lawsuit, only a portion of which pertains to the destruction of the Fisher design drawings.  I am therefore limiting the award to those fees associated with litigating this motion for sanctions.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to compel [#137] is granted to the extent that Emerson must answer parts (a) and (d) of Interrogatory No. 6. Emerson must produce documents responsive to Interrogatory No. 13 and Request for Production No. 75 sufficient to show the tolerances relevant to Emerson's safety assertions.  Automation's attorney may view the documents with an expert at Emerson's place of business.  The motion to compel is denied in all other respects.

**IT IS FURTHER ORDERED** that the motion for sanctions [#143] is granted, but defendants' request for judgment or striking pleadings is denied.  At trial Emerson is entitled to the adverse inference instruction described above, but Automation is entitled to attempt to rebut the adverse inference.  Plaintiffs shall pay defendants reasonable attorneys' fees and expenses incurred in litigating the motion for sanctions.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of October, 2011.