UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PROCESS CONTROLS INTERNATIONAL, INC., d/b/a AUTOMATION SERVICE, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) Case No. 4:10CV645 CDP |
| EMERSON PROCESS MANAGEMENT, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Pending before me are motions to dismiss by defendants FM Approvals, LLC and Emerson.[1]  On October 6, 2011, I granted a motion allowing plaintiff Process Controls International, Inc., doing business as Automation Service, to file its third amended complaint, which was deemed filed that same day.  In response, FM Approvals has now moved to dismiss the three new counts, 13, 14, and 15.  Emerson also sought dismissal of those counts, although they are not brought against it.  Emerson also seeks to dismiss three counts that are not new, 9, 10, and 11.  I will deny that motion for the same reason I denied it earlier.  I will grant FM Approval's motion to dismiss new counts 13, 14, and 15.

---

[1]Emerson Process Management, Fisher Controls, International, LLC, and Rosemount, Inc. are all entities within the Emerson company.  I will use "Emerson" when referring collectively to all three entities.

**Discussion**

I.     **Counts 9, 10, and 11**

Emerson seeks to dismiss Counts 9, 10, and 11 of Automation's third amended complaint. These three counts are brought against Emerson, and allege, respectively, false advertising, tortious interference with business expectancy, and defamation. Automation alleges that Emerson has falsely and publicly asserted that products remanufactured by Emerson are safer than products remanufactured by Automation.

Emerson argues that Counts 9, 10, and 11 should be dismissed because they incorporate "new conspiracy allegations" that fail to state a claim. Although Automation has added three new claims for civil conspiracy (Counts 13–15), the conspiracy claims incorporate Counts 9, 10, and 11, and not the other way around. I have already denied Emerson's earlier motion to dismiss Counts 9, 10, and 11. Those counts have not changed since that time;[2] there is therefore no reason to revisit this issue. Emerson's motion to dismiss is denied with regard to Counts 9, 10, and 11.

---

[2]The third amended complaint does contain three paragraphs that were not present in the original complaint: paragraphs 213, 221, and 232. They correspond, respectively, to paragraphs 187, 195, and 206 of the second amended complaint. In my May 10, 2011 order granting Automation's motion to file its second amended complaint, I ordered that these paragraphs be stricken. Although the paragraphs still appear in the third amended complaint, I now reiterate that they are stricken. As stated above, therefore, Counts 9, 10, and 11 remain unchanged from the time I ruled on Emerson's first Rule 12(b)(6) motion.

## II.     Counts 13, 14, and 15

Citing Federal Rule of Civil Procedure 12(b)(6), defendants FM Approvals and Emerson both move to dismiss Automation's civil conspiracy claims (Counts 13–15), contending that the complaint fails to plausibly suggest defendants had an agreement to engage in false advertising, tortious interference, or defamation.  In these counts, Automation alleges that FM Approvals provided Emerson with a letter and presentation containing false information.  The counts also allege that FM Approvals knew Emerson would use the allegedly false letter to support its claims that Emerson-remanufactured products are safer than Automation-remanufactured products.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  When, as here, a plaintiff attaches an exhibit to its complaint, that exhibit is considered to be part of the pleadings.  *See, e.g., Cole v. Homier Distrib. Co.*, 599 F.3d 856, 863 (8th Cir. 2010) (in deciding a motion to dismiss, a court may consider the allegations made in the complaint, documents attached to the complaint, and matters of public and administrative record referenced in the complaint).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corporation v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." 550 U.S. 544, 555 (2007), *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations that, if accepted as true, state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1949; *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). Plausible claims allow courts to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. However, if a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and should be dismissed for failure to state a claim. *Id.* (internal quotation marks and citation omitted). Determining whether a claim for relief is plausible is a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.* at 1950. The court may disregard allegations that are mere legal conclusions, because they "are not entitled to the assumption of truth." *Id.*

FM Approvals first argues that the conspiracy claims fail because the claims do not allege that FM Approvals engaged in the underlying tortious conduct. But such an allegation is not necessary. The elements of civil conspiracy under Missouri law are (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged. *Green v. Missouri*, 734 F. Supp. 2d 814, 854 (E.D. Mo. 2010) (quoting *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 1996)). It is true that "conspiracy is not itself actionable in the absence of an underlying wrongful act or tort." *Id.* (citing *Williams v. Mercantile Bank of St. Louis NA*, 845 S.W.2d 78, 85 (Mo. Ct. App. 1993). But only one of the alleged conspirators must have committed the underlying tort. *See Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008). Counts 9–11 allege that Emerson engaged in the underlying torts; this is sufficient to support the conspiracy claims regardless of whether Automation alleges that FM Approvals also engaged in the underlying torts.

I agree, however, with FM Approvals' argument that Automation has failed to adequately allege a plausible conspiracy between FM Approvals and Emerson. This is the third time Automation has included in its complaint some allegation of conspiracy between FM Approvals and Emerson. The previous allegations could not survive motions to dismiss, and these fare no better. In the new conspiracy

claims, Automation relies on a November 11, 2003 letter sent by FM Approvals to Emerson as well as an FM Approvals-created presentation to support its allegation that the defendants had a meeting of the minds to commit the torts against Automation.

The letter stated that in order to keep the FM Approvals certification mark, only the original manufacturer or an FM Approved remanufacturer could remanufacture a product.  The presentation stated that an end user could also repair a product, and explained that repair by either third-party or end user must be done at an FM Approved repair site.  Automation claims that this information was false and shows that FM Approvals was conspiring with Emerson.  "Master Agreements" between FM Approvals and Emerson required Emerson to provide end users with information sufficient to maintain and repair the products themselves.  Because FM Approvals allows end users to repair equipment and still maintain certification, Automation claims that the letter and presentation are false because they gave the impression that an entity must be FM Approved in order to repair a product.  But the "Master Agreement" also requires that the FM Approved manufacturer must provide an end user with facilities and services for repair, a requirement that is reflected in the letter and presentation.  In other words, end users must conduct their repairs with the instruction and oversight of the certified manufacturer, a safeguard not present for repairs by uncertified third parties such

as Automation.  It is thus not clear that the letter and presentation were actually false.

Even if the letter and presentation were false, they do not show a meeting of the minds between FM Approvals and Emerson regarding the alleged conspiracy. To withstand a motion to dismiss, Automation cannot merely allude to a meeting of the minds, but must support the assertion with specific allegations of collusion. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 (8th Cir. 2005).  Neither the letter nor presentation singled out Automation, and there is nothing in the complaint to indicate any agreement between the parties to use those materials in a campaign against Automation.  Automation merely alleges that FM Approvals knew or should have known that the materials would be used for the underlying torts.  This is a conclusory allegation unsupported by facts.  At best, a conspiracy is possible as a result of this evidence, but no more plausible than any legitimate explanation.

As further support for its conspiracy argument, Automation cites a November 2009 email from FM Approvals to one of Automation's customers, wherein FM Approvals informed the customer that Automation is not certified by FM Approvals to remanufacture equipment.  Although the email specifically mentioned Automation, it was a communication directly between FM Approvals and a third party, was initiated by the third party, and stated the true fact that

Automation was not FM Approved.  As with the letter and presentation, Automation has not shown how the email is evidence of a conspiracy, and has made only conclusory allegations.

For the reasons stated above, Automation has failed to plausibly suggest an agreement among defendants, and I must dismiss Counts 13, 14, and 15.  Both FM Approvals and Emerson moved to dismiss these counts; however, the counts are only raised against FM Approvals, making Emerson's motion superfluous.  I will therefore grant FM Approvals' motion to dismiss, and deny Emerson's motion as moot.

### III.  Automation's Request to Amend

In its brief, Automation requested leave to amend its complaint to "cure the deficiencies" if I granted any part of the defendants' motions to dismiss.  I deny this request.  This issue has been clearly articulated by the Sixth Circuit, in *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000):

> ... An open request for the Court to permit amendment to cure deficiencies, once the Court identifies those deficiencies, will not defeat a meritorious motion to dismiss pursuant to Rule 12(b)(6). Had plaintiffs filed a motion to amend the complaint prior to this Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint. The Court would not have dismissed this action had it been convinced that the deficiencies in the complaint would have been cured by the proposed amendments. Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). Plaintiffs were not

entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.

A request for leave to amend as an afterthought in a memorandum in opposition to defendants' motions to dismiss is not the same as a motion to amend.  The defendants have not had an opportunity to oppose the request, and Automation has not provided me with any reason to believe amendment would cure the deficiencies.  Automation has now filed three versions of its complaint, all containing allegations of conspiracy that were ultimately dismissed for failure to state a claim.  Nothing in Automation's memorandum indicates that an amended complaint would fare any differently.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Emerson's motion to dismiss [#190] is denied as to Counts 9, 10, and 11 and is denied as moot as to Counts 13, 14, and 15.

**IT IS FURTHER ORDERED** that defendant FM Approval's motion to dismiss [#188] is granted, and Counts 13–15 against it are dismissed with prejudice.  Only Count 12 remains against this defendant.

_Catherine D. Perry_
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2011.